## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| OAKLEY, INC., | Case No. 23-cv-04966 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| LIGHT IN THE BOX LIMITED and LIGHTINTHEBOX HOLDING CO., LTD., | |
| Defendants. | |

## COMPLAINT

Plaintiff Oakley, Inc. ("Oakley" or "Plaintiff") hereby brings the present action against Defendants Light In The Box Limited and LightInTheBox Holding Co., Ltd. (collectively herein, "Defendant" or "LITB") and alleges as follows:

### I. INTRODUCTION

1.      This action has been filed by Oakley to address Defendant's selling and offering for sale of products, including gloves, featuring counterfeit versions of Oakley's federally registered trademarks (the "Counterfeit Product") through Defendant's website at lightinthebox.com.  Oakley seeks to address Defendant's counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing low-quality counterfeit products over the Internet.  Oakley has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendant's actions and seek injunctive and monetary relief.

2.      Defendant is a repeat counterfeiter.  On July 1, 2014, Oakley filed the lawsuit 1:14-cv-04995, *Oakley, Inc. v. LightInTheBox Holding Co., Ltd., et al.,* in the United States

District Court for the Northern District of Illinois ("Lawsuit I") against Defendant for offering for sale and selling products bearing counterfeit Oakley trademarks through its website at lightinthebox.com. Defendant continued to offer for sale and sell products bearing counterfeit Oakley trademarks on multiple occasions despite receiving notices, and even while Lawsuit I was pending.

3.      On March 26, 2015, Oakley and Defendant entered into a valid and binding settlement agreement ("Agreement I") resolving Lawsuit I. Among other terms, Defendant agreed to immediately and permanently cease and desist from any further infringement or unauthorized use of the Oakley trademarks.

4.      In April 2016, Oakley again determined that Defendant was selling products bearing counterfeit versions of the Oakley trademarks through its website at lightinthebox.com and in violation of Agreement I. In addition, Luxottica Group S.p.A., Oakley's parent company, determined that Defendant was selling products bearing counterfeit versions of the Ray-Ban trademarks through its website at lightinthebox.com.

5.      On May 18, 2016, Oakley and Luxottica Group S.p.A. filed the lawsuit 1:16-cv-05314, *Luxottica Group S.p.A., et al. v. LightInTheBox Holding Co., Ltd., et al.*, in the United States District Court for the Northern District of Illinois ("Lawsuit II") against Defendant for trademark infringement and counterfeiting, and breach of contract of Agreement I. On October 19, 2016, a preliminary injunction was entered against LITB enjoining further infringement or unauthorized use of the Oakley and Ray-Ban trademarks, noting that there are "serious questions about Defendant's ability to police its own website to ensure that it is not selling counterfeit goods." *Luxottica Grp. S.p.A. v. Light in the Box Ltd*., No. 16-cv-05314, 2016 U.S. Dist. LEXIS 144660, at *21 (N.D. Ill. Oct. 19, 2016).

6.      On March 2, 2018, Oakley, Luxottica Group S.p.A., and Defendant entered into a valid and binding settlement agreement ("Agreement II") resolving Lawsuit II.  Among other terms, Oakley, Luxottica Group S.p.A., and Defendant agreed to entry of a Stipulated Final Order for Consent Judgment, Permanent Injunction, and Dismissal.  A true and correct copy of the Stipulated Final Order for Consent Judgment, Permanent Injunction, and Dismissal is attached hereto as **Exhibit 1**.

7.      In April 2019, Oakley once again determined that Defendant was selling products bearing counterfeit versions of the Oakley trademarks through its websites at lightinthebox.com and miniinthebox.com and filed the lawsuit 1:19-cv-03602, *Oakley, Inc. v. Light In The Box Limited*, in the United States District Court for the Northern District of Illinois ("Lawsuit III") against Defendant for trademark infringement and counterfeiting.

8.      On October 9, 2019, Oakley, Luxottica Group S.p.A., and Defendant entered into a valid and binding settlement agreement ("Agreement III") resolving Lawsuit III. Among other terms, Defendant agreed to immediately and permanently cease and desist from any further infringement or unauthorized use of Oakley's trademarks.

9.      In June 2023, Oakley once again determined that Defendant was selling products bearing counterfeit versions of the Oakley trademarks through its website lightinthebox.com. Namely, Defendant is offering for sale and selling the same product infringing Oakley's trademarks that was involved in Lawsuit III.

## II. JURISDICTION AND VENUE

10.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action pursuant to

the Agreement III, in which Oakley and Defendant consented to the jurisdiction of the federal courts in the State of Illinois, County of Cook, in the event court action becomes necessary to enforce the agreement.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3), and this Court may properly exercise personal jurisdiction over Defendant pursuant to the terms of Agreement III.

## III. THE PARTIES

**Plaintiff Oakley**

12.     Plaintiff Oakley is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610.

13.     Plaintiff Oakley is an indirect, wholly-owned subsidiary of Luxottica Group S.p.A.  Oakley is an internationally recognized manufacturer, distributor and retailer of eyewear, apparel, footwear, outerwear, jackets, gloves, accessories and other merchandise, all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including OAKLEY and various Icon logos (collectively, the "Oakley Products").

14.     Oakley Products have become enormously popular and even iconic, driven by Oakley's arduous quality standards and innovative design.  Among the purchasing public, genuine Oakley Products are instantly recognizable as such.  In the United States and around the world, the Oakley brand has come to symbolize high quality, and Oakley Products are among the most recognizable eyewear, apparel, footwear, outerwear, jackets, gloves and accessories in the world.

15.     Oakley Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, the official Oakley.com website which was launched in 1995, and Oakley O Stores.

16.     Oakley incorporates a variety of distinctive marks in the design of its various Oakley Products.  As a result of its long-standing use, Oakley owns common law trademark rights in its trademarks.  Oakley has also registered its trademarks with the United States Patent and Trademark Office.  Oakley Products typically include at least one of Oakley's registered trademarks.  Often several Oakley marks are displayed on a single Oakley Product.  Oakley has registered its trademarks with the United States Patent and Trademark Office.  Oakley uses its trademarks in connection with the marketing of its Oakley Products, including, but not limited to, the following marks which are collectively referred to as the "OAKLEY Trademarks."

| Registration Number | Trademark |
|---|---|
| 1,522,692 2,293,046 | OAKLEY |
| 5,109,790 |  |
| 3,331,124 |  |

17.     The above registrations for the OAKLEY Trademarks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065.  Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the OAKLEY Trademarks are conclusive evidence of the validity of the OAKLEY Trademarks and of the registrations of the OAKLEY

Trademarks, of Oakley's ownership of the OAKLEY Trademarks, and of Oakley's exclusive right to use the OAKLEY Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065. The OAKLEY Trademarks have been used exclusively and continuously by Oakley for many years and have never been abandoned. Attached hereto as **Exhibit 2** are true and correct copies of the United States Registration Certificates for the OAKLEY Trademarks included in the above table.

18. The OAKLEY Trademarks are exclusive to Oakley and are displayed extensively on Oakley Products and in Oakley's marketing and promotional materials. Typically, at least one of the OAKLEY Trademarks is included on Oakley Products. Oakley Products have long been among the most popular eyewear in the world and have been extensively promoted and advertised at great expense. In fact, Oakley has expended millions of dollars annually in advertising, promoting, and marketing the OAKLEY Trademarks. Oakley Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. Because of these and other factors, the Oakley name and the OAKLEY Trademarks have become famous throughout the United States.

19. The OAKLEY Trademarks are distinctive when applied to the Oakley Products, signifying to the purchaser that the products come from Oakley and are manufactured to Oakley's quality standards. Whether Oakley manufactures the products itself or licenses others to do so, Oakley has ensured that products bearing its trademarks are manufactured to the highest quality standards. The OAKLEY Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the OAKLEY Trademarks is of incalculable and inestimable value to Oakley.

20. Since at least as early as 1995, Oakley has operated a website where it promotes and sells genuine Oakley Products at Oakley.com. Sales of Oakley Products via the Oakley.com

website represent a significant portion of Oakley's business. The Oakley.com website features proprietary content, images, and designs exclusive to Oakley.

21.     Oakley's innovative marketing and product designs have enabled Oakley to achieve widespread recognition and fame and have made the OAKLEY Trademarks some of the most well-known marks in the eyewear and apparel industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Oakley brand have made the OAKLEY Trademarks valuable assets of Oakley.

22.     Oakley has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the OAKLEY Trademarks. As a result, products bearing the OAKLEY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Oakley. Oakley is a multi-million-dollar operation, and Oakley Products have become among the most popular of their kind in the world.

**Defendant**

23.     On information and belief, Defendant Light In The Box Limited is a corporation incorporated in Hong Kong. On information and belief, Defendant Light In The Box Limited primarily engages in product sourcing, marketing, and the operation of Defendant's websites at www.lightinthebox.com and www.miniinthebox.com, through which it offers for sale products in the categories of apparel and other general merchandise, targeted towards consumers worldwide, including in the United States.

24.     According to its Securities and Exchange Commission ("SEC") filings, Defendant LightInTheBox Holding Co., Ltd. is a Limited Company organized under the laws of Cayman Islands, with a principal place of business of 51 Tai Seng Avenue, #05-02B/C, Pixel Red,

7

Singapore (533941). Defendant LightInTheBox Holding Co., Ltd. is a publicly traded company on the New York Stock Exchange (NYSE: LITB). According to its SEC filings, Defendant LightInTheBox Holding Co., Ltd. is an apparel e-commerce retailer that operates its business in the United States and throughout the world, through at least www.lightinthebox.com, www.miniinthebox.com, www.ezbuy.sg, and mobile applications. According to its SEC filings, Light In The Box Limited is a wholly owned subsidiary of LightInTheBox Holding Co., Ltd., and LightInTheBox Holding Co. Ltd. conducts its operations through Light In The Box Limited.

25. Defendant conducts business throughout the United States, through at least the operation of the fully interactive commercial websites at www.lightinthebox.com and www.miniinthebox.com. Defendant targets consumers in the United States, and has offered to sell, and has sold the Counterfeit Product to consumers within the United States though at least the www.lightinthebox.com website.

## IV. DEFENDANT'S UNLAWFUL CONDUCT

26. Defendant operates the fully interactive commercial websites located at lightinthebox.com and www.miniinthebox.com.

27. Through at least the operation of the website at lightinthebox.com, Defendant is engaged in designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale products bearing logos and source-identifying indicia and design elements that are studied imitations and counterfeits of the OAKLEY Trademarks (previously defined as the "Counterfeit Product").

28. Oakley visited Defendant's website at lightinthebox.com and purchased the Counterfeit Product.

29. The purchased Counterfeit Product was shipped to Oakley.

30. The purchased Counterfeit Product was inspected, and it was determined that the product was counterfeit and infringed the OAKLEY Trademarks.

31. A comparison of the OAKLEY Trademarks to Defendant's Counterfeit Product exemplifies Defendant's counterfeiting and infringement of the OAKLEY Trademarks.

| OAKLEY Trademarks | Defendant's Counterfeit Product |
|---|---|
|  (Reg. No. 5,109,790) |  |

| OAKLEY<br>(Reg. Nos. 1,522,692 and 2,293,046)<br><br><br><br>(Reg. No. 3,331,124) |  |
|---|---|

32.     On information and belief, Defendant is well aware of the extraordinary fame and strength of the OAKLEY Trademarks and the goodwill associated therewith.

33.     Defendant, without any authorization, license, or other permission from Oakley, has used the OAKLEY Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Product into the United States over the Internet.

34.     Defendant's use of counterfeits of the OAKLEY Trademarks in the advertisement, distribution, offering for sale, and sale of Counterfeit Product was willful.

35.     Defendant's willful use of counterfeits of the OAKLEY Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Product is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Oakley.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

36.     Oakley hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37.     This is a trademark infringement action against Defendant based on its unauthorized use in commerce of counterfeit imitations of the federally registered OAKLEY Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The OAKLEY Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Oakley Products sold or marketed under the OAKLEY Trademarks.

38.     Defendant has sold, offered to sell, marketed, distributed, and advertised, and is still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeits of the OAKLEY Trademarks without Oakley's permission.

39.     Oakley is the exclusive owner of the OAKLEY Trademarks.  Oakley's United States Registrations for the OAKLEY Trademarks (Exhibit 2) are in full force and effect.  On information and belief, Defendant has knowledge of Oakley's rights in the OAKLEY Trademarks and is willfully infringing and intentionally using counterfeits of the OAKLEY Trademarks.   Defendant's willful, intentional, and unauthorized use of the OAKLEY Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Product among the general public.

40.     Defendant's activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

11

41.     Oakley has no adequate remedy at law, and if Defendant's actions are not enjoined, Oakley will continue to suffer irreparable harm to its reputation and the goodwill of its well-known OAKLEY Trademarks.

42.     The injuries and damages sustained by Oakley have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of the Counterfeit Product.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

43.     Oakley hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

44.     Defendant's promotion, marketing, offering for sale, and sale of the Counterfeit Product has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Oakley or the origin, sponsorship, or approval of Defendant's Counterfeit Product by Oakley.

45.     By using the OAKLEY Trademarks on the Counterfeit Product, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Product.

46.     Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Product to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

47.     Oakley has no adequate remedy at law and, if Defendant's actions are not enjoined, Oakley will continue to suffer irreparable harm to its reputation and the goodwill of the Oakley brand.

## COUNT III
## BREACH OF CONTRACT

48.    Oakley hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

49.    Agreement III entered into by Oakley and Defendant created a contract between Oakley and Defendant whereby Defendant agreed it would immediately and permanently cease and desist from any further infringement or unauthorized use of the Oakley Trademarks (as defined in Agreement III), including but not limited to, any further purchases, offers to sell, and/or sales of the Counterfeit Product and any further use of the Oakley Trademarks to promote sales of products not made by Oakley.

50.    Agreement III is a valid and enforceable contract.

51.    Agreement III is binding upon Oakley and Defendant, their successors, assigns, parents, subsidiaries, and related companies.

52.    Oakley performed all of its obligations under Agreement III.

53.    Defendant breached Agreement III by offering for sale and selling the Counterfeit Product on its www.lightinthebox.com website.

54.    As a result of Defendant's breach of Agreement III, Oakley has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Oakley prays for judgment against Defendant as follows:

1) That Defendant, its officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with Defendant be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.  using the OAKLEY Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing,

advertising, offering for sale, or sale of any product that is not a genuine Oakley Product or is not authorized by Oakley to be sold in connection with the OAKLEY Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Oakley Product or any other product produced by Oakley, that is not Oakley's or not produced under the authorization, control or supervision of Oakley and approved by Oakley for sale under the OAKLEY Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendant's products are those sold under the authorization, control or supervision of Oakley, or are sponsored by, approved by, or otherwise connected with Oakley;

d. further infringing the OAKLEY Trademarks and damaging Oakley's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Oakley, nor authorized by Oakley to be sold or offered for sale, and which bear any of Oakley's trademarks, including the OAKLEY Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) That Defendant, within fourteen (14) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Oakley a written report under oath setting forth in detail the manner in which Defendant has complied with paragraph 1, a through e, above;

3) That Defendant account for and pay to Oakley all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement

of the OAKLEY Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Oakley be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c) of $2,000,000 for each and every use of the OAKLEY Trademarks;

5) That Defendant be preliminarily and permanently enjoined from breaching Agreement III between Oakley and Defendant;

6) That Oakley be awarded damages for Defendant's breach of Agreement III between Oakley and Defendant;

7) That Oakley be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Oakley hereby demands a trial by jury as to all issues so triable.

Dated this 28th day of July 2023.                    Respectfully submitted,


/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Jake M. Christensen
Berel Y. Lakovitsky
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
jchristensen@gbc.law
blakovitsky@gbc.law

*Counsel for Plaintiff Oakley, Inc.*

15